**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | **NO. 23-307** |
| | : | |
| **FELTON HAYMAN** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                     **August 24, 2023**

Our Grand Jury returned an indictment on July 18, 2023 charging Felton Hayman with engaging in a wire fraud scheme from 2014-2018 by failing to disclose his intent to "flip" vacant real properties he bought at below market prices from the City of Philadelphia knowing the City's policy to sell these properties at below market price only when the buyer seeks to revitalize the area. Mr. Hayman purchased vacant real property from the City at below market value representing he would redevelop the property. He then sold purchased properties to commercial buyers at a substantial profit. His agents sent emails and he accepted wire transfer funds in August 2018 to buy and then sell properties. Our Grand Jury detailed a wire fraud charge in seventy-nine paragraphs describing the materiality of Mr. Hayman's allegedly fraudulent representations.

Mr. Hayman moves to dismiss arguing our Grand Jury did not state the essential elements of wire fraud in the Indictment, the United States delayed for years in bringing the charges to his prejudice, and a recent Supreme Court decision requires we dismiss charges involving the use of wires to obtain real property from the City. We disagree with Mr. Hayman after fulsome oral argument. The Grand Jury sufficiently plead each element of wire fraud. Mr. Hayman offered no basis to find the United States engaged in prejudicial preindictment delay. The Supreme Court's narrow decision does not apply as the money and real property allegedly gained by Mr. Hayman as described in the Indictment are traditional property interests under the wire fraud statute.

I.    **Our Grand Jury's allegations.**

The City of Philadelphia owns thousands of vacant lots.[1]  The City issued policies in 2014 to 2018 with governing principles for pricing for its vacant land it may sell to private parties.[2]  The policies confirm the City's intent to sell vacant property at a discount from fair market value only to eliminate blight and revitalize neighborhoods.[3]  The policy in 2015 confirmed the City would sell its vacant lots at "fair market value" if the interested buyer disclosed the subject property would be for private use, and for a "discounted value[]" if the interested buyer disclosed the subject property would be used for affordable housing.[4]  The City updated appraisals for properties when the interested buyer intended to develop the property for private use to ensure it obtained fair market value.[5]

The Philadelphia Department of Public Property, the Philadelphia Land Bank and the Philadelphia City Council control the process for selling vacant City-owned property to interested buyers.[6]  Interested buyers first need approval from the Vacant Property Review Committee to purchase vacant property.[7]  The Review Committee then votes whether to recommend City Council pass a resolution authorizing the sale of property at a certain price to the interested buyer.[8]  Support from the City Councilperson in whose district the property is located is the most important factor in the Review Committee's decision to pass a resolution authorizing the sale of the vacant property.[9]  Individual City councilmembers dictate "nearly all" land use decisions in their district through a practice known as "Councilmanic Prerogative."[10]   Support from the district Councilperson to sell the vacant property to the interested buyer virtually assures its sale.[11]  The City Council will then pass a resolution enabling and authorizing the City to sell the property to the buyer after receiving approval from the Review Committee.[12]

### A.    Mr. Hayman purchases the Ellsworth and Manton properties.

Felton Hayman sought to purchase six city-owned vacant properties in June 2014 and quickly sell, or "flip," the city-owned properties for a profit.[13]    Mr. Hayman allegedly misrepresented to his "longtime friend and neighbor" Councilperson he planned to build affordable housing on the six vacant properties if he received approval to purchase them from the City.[14]  Mr. Hayman failed to tell the Councilperson and other City officials his engagement with real estate agents and plan to "flip" the vacant properties for profit.[15]  The Councilperson wrote a letter to the Committee supporting the sale of three properties to Mr. Hayman on August 28, 2014.[16]  Mr. Hayman's employee allegedly told the Committee Mr. Hayman planned to convert the newly-purchased vacant lots to affordable housing on October 14, 2014.[17]

Mr. Hayman obtained title to three of the properties in January 2016 for at total price of $70,488.[18]  He and his company did not build affordable housing on any of the three lots.[19] He instead sold: one of the properties for approximately $415,000 on May 8, 2018; the second property for approximately $325,000 four months later; and the third property for approximately $340,000 three weeks later.[20]

### B.    Mr. Hayman purchases the South Bucknell and Titan properties.

The Councilperson wrote to the Committee in September 2014 supporting Mr. Hayman's purchase of three properties located on South Bucknell and Titan Streets in the Councilperson's district.[21]  Mr. Hayman allegedly stated at a Committee hearing he planned to build "three-story single-family homes for resale" on the vacant lots.[22]  Our Grand Jury alleged Mr. Hayman tried and failed to obtain title to the properties from 2014 to November 12, 2015 when the Councilperson then withdrew his support for Mr. Hayman's plan.[23]

Mr. Hayman renewed his interest in the vacant properties in spring 2018.[24]  The titles to the properties then included restrictions preventing Mr. Hayman from reselling the properties within five years of purchase for a price greater than fifteen percent of Mr. Hayman's original purchase price.[25]

Mr. Hayman contacted a realtor in May 2018 to advertise the properties for sale before Mr. Hayman received title.[26]  The realtor allegedly sent emails to other "realtors, investors, and developers" on August 1, 2018 and found a buyer for one of the properties for $150,000.[27]  The purported buyer allegedly balked at the restrictions included in the property title and signed a document "purport[ing] to be a financing agreement."[28]  The purported financing agreement misrepresented the buyer would be financing Mr. Hayman's purchase of the property but no financing agreement existed.[29]  Mr. Hayman presented the fraudulent financing agreement to the Review Committee asking it remove certain title restrictions for the financer's benefit but the Committee refused to lift the restrictions.[30]

Mr. Hayman obtained title to the properties on August 31, 2018 for an aggregate price of $106,792.78.[31]  Mr. Hayman withdrew $106,792.78 from a T.D. Bank interstate bank account to purchase the properties on August 26, 2018.[32]  Mr. Hayman sold two of the properties for $115,000 each on September 18, 2018.[33]  Mr. Hayman has not sold the third property.[34]

## II.    Analysis

Our Grand Jury charged Felton Hayman with three counts of wire fraud related to the emails allegedly sent by Mr. Hayman's realtor in early August 2018 and Mr. Hayman's August 26, 2018 bank withdrawal to purchase the South Bucknell and Titan properties.[35]  The Grand Jury charged Mr. Hayman with devising and participating in a scheme to defraud and obtain "money

4

and property from the City of Philadelphia – specifically real estate located in and owned by the City" under false pretenses and misrepresentations.[36]

Mr. Hayman moves to dismiss arguing the Grand Jury did not plead the essential elements of wire fraud.  He argues the United States' failure to obtain the Indictment for almost five years until after the last charged wire communication constituted prejudicial delay by exceeding the statute of limitations and preventing Mr. Hayman from examining the Councilperson's former Chief of Staff, now deceased, and the Committee's former Senior Chairperson.  Mr. Hayman also argues we must follow the Supreme Court's teachings in *Ciminelli* to dismiss the Indictment because Mr. Hayman did not deprive the City of money or property and instead deprived the City of information concerning his intent.

The United States counters our Grand Jury plead the essential elements of the wire fraud offense by alleging Mr. Hayman made fraudulent misrepresentations to the Councilperson and the Review Committee in 2014.  Our Grand Jury issued the Indictment within the five-year statute of limitations as three wire fraud predicates occurred in August 2018.  The United States also argues the Supreme Court's guidance in *Ciminelli* does not apply because Mr. Hayman attempted to defraud the City of money and property.  The United States also highlights *Ciminelli's* narrow holding rejected only the "right-to-control" theory formerly espoused by the United States Court of Appeals for the Second Circuit.

### A. The Grand Jury properly plead wire fraud.

Mr. Hayman argues the Indictment is "facially defective" because our Grand Jury fails to plead the essential elements of wire fraud and joins two or more offenses in the same count.[37]  He argues the last alleged misrepresentation concerning the purchased properties occurred on October 14, 2014 which is beyond the five-year statute of limitations.[38]  Mr. Hayman argues the Grand Jury

fails to plead he intended to defraud the City because it does not attribute an email to Mr. Hayman.[39]  Mr. Hayman also argues receiving an updated appraisal for one of the properties does not demonstrate an intent to defraud the City because City policy required updated appraisals where an interested buyer intended to use the property for private use.[40]

The United States counters the Grand Jury sufficiently pleads the essential elements of wire fraud and the charged conduct falls within the five-year statute of limitations.[41]  The United States highlights all three charged wire fraud predicates occurred in August 2018.[42]  The United States disagrees with Mr. Hayman's contention the Indictment joins two or more offenses in the same count as our Grand Jury charged a "single scheme to defraud the City" which began in 2014 and the August 2018 wire communications were in furtherance of the scheme.[43]  The United States argues it does not need to attribute the emails described in the Indictment to Mr. Hayman but instead must only show an interstate wire transmission "used in some manner" furthered Mr. Hayman's scheme and Mr. Hayman "knew" or "reasonably should have anticipated" the transmission would "follow in the ordinary courts of business or events."[44]  The United States argues the updated appraisals for the purchased properties confirms Mr. Hayman purchased the properties below the value a developer planning to use the properties for private use would pay.[45]

We find the Grand Jury sufficiently plead the essential elements of wire fraud.

We review an alleged defect in an indictment under Federal Rule of Criminal Procedure 12(b)(3)(B).[46]  Our review is limited to determining "whether the facts alleged in the indictment, if accepted as entirely true, state the elements of [the charged] offense and could result in a guilty verdict."[47]  The Supreme Court, through Rule 12(b)(3)(B), does not authorize us to review the sufficiency of the evidence included in the indictment.[48]

We begin by reviewing whether our Grand Jury pleads the elements of wire fraud. The elements of wire fraud are: (1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of ... interstate wire communications in furtherance of the scheme."[49]

We accept each of the Grand Jury's fact allegations as true under Federal Rule of Criminal Procedure 12(b)(3)(B).[50] The Grand Jury alleges wire fraud as defined by Congress in 18 U.S.C. § 1343:

| Elements | Language in Indictment |
| --- | --- |
| knowingly devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises | "Felton Hayman devised and intended to devise, and participated in a scheme and artifice to defraud, and to obtain money and property from the City of Philadelphia...by mean means of materially false and fraudulent pretenses, representations, and promises."[51] |
| intent to defraud | "participated in a scheme and artifice to defraud"[52] |
| transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce in furtherance of scheme | Count I – An August 1, 2028 email sent from the Mr. Hayman's realtor; Count II – an email sent from Mr. Hayman's realtor on August 3, 2018; and Count III – a August 26, 2018 withdrawal of $106,792.78 from a bank account outside of Pennsylvania with Mr. Hayman as one of two signatories.[53] |

We deny Mr. Hayman's challenge to the Indictment for failure to state the essential elements of wire fraud. Mr. Hayman concludes the Indictment fails to state the essential elements of wire fraud and he spends more time attacking the sufficiency of the evidence.[54] The Grand Jury properly plead each element of wire fraud.[55] We do not assess sufficiency of evidence today.[56]

### B. Mr. Hayman offers no basis to find the United States engaged in prejudicial preindictment delay.

Mr. Hayman argues the United States' delay in filing the Indictment in 2023 several years after the alleged acts prejudiced him because it caused "defense evidence to go stale."[57] Mr.

7

Hayman cites at least one potential defense witness died and another retired between the charged 2018 wire communications and the Indictment.[58]

The United States counters by highlighting Supreme Court guidance considering the statute of limitations as the main protection against bringing stale criminal charges.[59] The United States counters several other witnesses are alive and can testify about the City's policies and practices and those of other government agencies, and several testified to the Grand Jury.[60]

Mr. Hayman does not show the United States engaged in preindictment delay and he has been prejudiced by the alleged delay.

Congress defined a five year statute of limitations for wire fraud.[61] The statute begins to run for mail or wire fraud when a defendant "places, deposits, causes to be deposited, takes, or receives mail, or knowingly causes mail to be delivered, as part of the execution of a scheme to defraud."[62] The Grand Jury alleges Mr. Hayman committed acts (delivering/receiving emails) on August 1, August 3, and August 26, 2018 to further his scheme to defraud the City. The Grand Jury indicted Mr. Hayman on July 18, 2023.[63] The Grand Jury delivered the Indictment within the five-year statute of limitations.[64]

The Supreme Court instructs "the applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges" and "[t]hese statutes provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced."[65] To successfully invoke the due process clause for preindictment delay, "a defendant must prove actual prejudice and intentional delay by the government to gain a tactical advantage."[66]

We are guided by Judge Farnan's applying the prejudicial delay rubric defined by our Court of Appeals when addressing a two-year delay between the defendant's acts and indictment.[67] The

defendant in *Stewart* argued the United States' delay in indicting him resulted in "severe prejudice" because the defendant's memory of the charged events "faded due to delay" and several witnesses who would have testified at the time of the charged events were unavailable.[68]  Judge Farnan denied the motion to dismiss finding the defendant failed to demonstrate "what the missing witness would have stated under oath; and [] how the testimony would have been beneficial to the defense and found credible by the jury."[69]

Mr. Hayman does not offer a basis for us to find actual prejudice or intentional delay to gain a tactical advantage.  Mr. Hayman claims several witnesses with knowledge of the "policies, patterns and practices of City Council" concerning the sale of City-owned lots are now unable to testify.[70]  The United States counters "[t]here are numerous living witnesses who can still testify about the policies and practices of the City Council and other government agencies regarding the sales of City-owned lots" and highlights the testimony of several of these witnesses to the Grand Jury.[71]  Mr. Hayman does not explain why the now-deceased and now-retired witnesses are the only ones with knowledge of the City's "policies, patterns and practices."  He also does not demonstrate the United States intentionally delayed our Grand Jury's delivery of the Indictment to gain a tactical advantage over Mr. Hayman.

### C. Mr. Hayman does not show how the "right-to-control" theory applies.

Mr. Hayman argues the Supreme Court's May 2023 holding in *Ciminelli v. United States* requires we quash the Indictment "based on the 'right-to-control' theory" of wire fraud liability.[72]  He calls our attention to Justice Thomas's instruction it is not the judiciary's responsibility to "set standards of disclosure and good government for state and local officials."[73]

The United States distinguishes *Ciminelli* as involving bid-rigging and withholding "valuable economic information."[74]  The United States highlights our Grand Jury charged Mr. Hayman with "obtaining money and property from the City of Philadelphia."[75]

We find our Grand Jury's Indictment is not barred by the Supreme Court's guidance in *United States v. Ciminelli*.[76]

The Supreme Court in *Ciminelli* overturned wire fraud and conspiracy convictions of persons who devised and participated in a bid-rigging scheme relating to public contracts in Buffalo, New York.[77] The United States prosecuted Louis Ciminelli for his involvement in a scheme to rig the bid process for obtaining state-funded development projects associated with then-New York Governor Andrew Cuomo's Buffalo Billion initiative.[78] The United States based its case on a theory of Mr. Ciminelli concealing critical information from the agency awarding the contract.[79] The Supreme Court found valuable economic information is not a traditional property interest and is an inappropriate basis for wire fraud liability.[80]

We are unable to find a federal judge applying the Supreme Court's narrow *Ciminelli* holding to a wire fraud case involving fraudulent misrepresentations to purchase real property.  We are guided by our Court of Appeals' recent opinion instructing money paid by the victims of a scheme is property subject to the wire fraud statute.[81]  The grand jury charged the defendant in *Porat* with wire fraud for his scheme to raise a graduate school's rankings in U.S. News and World Report.[82]  The defendant argued he "deprived [the students] only of rankings, and 'rankings are not property.'"[83]  Our Court of Appeals affirmed the defendant's conviction because the jury did not convict "on the theory that he deprived the students of rankings; he was convicted for depriving them of *tuition money*."[84]

10

Judge Crotty similarly rejected arguments two weeks ago applying *Ciminelli* to a scheme designed to fraudulently obtain money from city agencies.[85]  The defendant in *Fishbein* falsely represented to several New York City agencies he owned and operated several rental properties.[86] The defendant applied for rental assistance programs designed to "facilitate the movement of homeless families out of the [New York City's] shelter system into more permanent rental housing" and received "rental subsidy payments" and "federal government funds" for his participation despite not owning the properties.[87]  Judge Crotty denied the defendant's motion to vacate his conviction under *Ciminelli* because the grand jury premised the indictment "on a straightforward allegation that Fishbein fraudulently obtained money he was not entitled to."[88]

Our Grand Jury did not charge Mr. Hayman deprived the City of the "right-to-control" information on the awarding of a public contract or "potentially valuable economic information necessary to make discretionary economic decisions" like in *Ciminelli*.  Our Grand Jury instead charged Mr. Hayman with obtaining "money and property from the City of Philadelphia – specifically, real estate located in and owned by the City" by failing to disclose his intent to flip the properties after purchase.[89]  Real estate and money are traditional property interests.[90]  The property interests asserted in *Ciminelli* are inapposite to those charged today.  Our Grand Jury did not allege Mr. Hayman bribed a Councilperson or members of the Committee before receiving approval to purchase vacant lots like the defendants in *Ciminelli* rigged the bids for a government contract before award.

## III.   Conclusion

We deny Mr. Hayman's Motion to dismiss.  He may challenge the sufficiency of the United States' trial evidence, but his arguments do not warrant dismissal.

11

---

[1] ECF No. 1 ¶ 1.

[2] *Id.* ¶¶ 14-16.

[3] *Id.* ¶ 16.

[4] *Id.*

[5] *Id.* ¶ 20.

[6] *Id.* ¶¶ 2, 4.

[7] *Id.* ¶ 5.

[8] *Id.* ¶ 6.

[9] *Id.* ¶ 22.

[10] *Id.* ¶ 25.

[11] *Id.* ¶ 26.

[12] *Id.* ¶ 7.

[13] *Id.* ¶ 34-35.

[14] *Id.* ¶¶ 30, 37.

[15] *Id.* ¶ 39.

[16] *Id.* ¶ 42.

[17] *Id.* ¶ 43.

[18] *Id.* ¶ 45.

[19] *Id.* ¶ 49.

[20] *Id.*

[21] *Id.* ¶ 50.

[22] *Id.* ¶ 51.

[23] *Id.* ¶¶ 53-58.

[24] *Id.* ¶ 59.

[25] *Id.* ¶ 71.

[26] *Id.* ¶ 63.

[27] *Id.* ¶¶ 68, 69.

[28] *Id.* ¶ 73.

[29] *Id.*

[30] *Id.* ¶ 74.

[31] *Id.* ¶¶ 70, 71.

[32] *Id.* ¶ 70.

[33] *Id.* ¶ 76.

[34] *Id.*

[35] *Id.* ¶ 79.

[36] *Id.* ¶ 33.

[37] ECF No. 12 ¶¶ 6, 8.

[38] *Id.* ¶ 8.

[39] *Id.* ¶¶ 10, 12.

[40] *Id.* ¶¶ 14-15.

[41] ECF No. 23 at 4.

[42] *Id.* at 5.

[43] *Id.* at 6.

[44] *Id.* at 7.

[45] *Id.* at 8.

[46] *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011).

[47] *Id.* (citing *United States v. DeLaurentis*, 230 F.3d 659, 660-661 (3d Cir. 2000)).

[48] *DeLaurentis*, 230 F.3d at 660.

[49] *United States v. Andrews*, 681 F.3d 509, 518 (3d Cir. 2012); *see also* Third Circuit Model Criminal Jury Instructions, No. 6.18.1343. https://www.ca3.uscourts.gov/sites/ca3/files/2021%20Chap%206%20Fraud%20Offenses%20fin al.pdf.

[50] *Bergrin*, 650 F.3d at 268 (3d Cir. 2011) (citing *DeLaurentis*, 230 F.3d at 660-661).

[51] ECF No. 1 ¶ 33.

[52] *Id.*

[53] *Id.* ¶ 79.

[54] ECF No. 12 ¶¶ 6, 9-21.

[55] *United States v. Bryant*, 556 F. Supp. 2d 378, 433 (D.N.J. 2008) ("The Indictment sufficiently alleges mail fraud if it alleges . . . willful participation in a 'scheme or artifice to defraud' the Division out of money or property, and a mailing in furtherance of the scheme."). Mr. Hayman's counsel argues Mr. Hayman's failure to sell the sixth property requires us to dismiss the Indictment. Congress does not require the defendant succeed in the charged scheme to be convicted for wire fraud. *United States v. Porat*, No. 22-1560, 2023 WL 5009238, at *5 (3d Cir. Aug. 7, 2023) (citing *United States v. Frey*, 42 F.3d 795, 800 (3d Cir. 1994)).

[56] *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012); *DeLaurentis*, 230 F.3d at 660. Mr. Hayman's counsel argued several challenges to the charges we find are better suited for our jury.

[57] ECF No. 12 ¶ 23.

[58] *Id.*

[59] ECF No. 23 at 10.

[60] *Id.* at 11.

[61] *See* 18 U.S.C. 3282(a).

[62] *United States v. Hoffecker*, 530 F.3d 137, 157 (3d Cir. 2008) (*citing United States v. Pharis,* 298 F.3d 228, 234 n. 3 (3d Cir.2002)).

[63] *See* ECF No. 1.

[64] Mr. Hayman's argument the wire communications are barred by the statute of limitations is plainly incorrect. *See* ECF No. 12 ¶ 7. The wire fraud predicate acts dictate the statute of limitations. Mr. Hayman, for example, could be indicted for this scheme if he sent wire communications in furtherance of the scheme much later than his alleged fraudulent statements.

[65] *United States v. Marion*, 404 U.S. 307, 322 (1971).

[66] *United States v. Otto*, 742 F.2d 104, 107 (3d Cir. 1984) (citing *Marion*, 404 U.S. at 325-26).

[67] *United States v. Stewart*, No. 02-62-1, 2003 WL 22134841 (D. Del. Sept. 5, 2003).

[68] *Id.* at *1, 2.

[69] *Id.* at *3.

[70] ECF No. 12 ¶ 23.

[71] ECF No. 23 at 11.

[72] ECF No. 12 ¶ 24.

[73] *Id.* (quoting *Ciminelli v. United States*, 598 U.S. 306, 316 (2023)).

[74] *Ciminelli*, 598 U.S. at 316.

[75] ECF No. 23 at 13.

[76] 598 U.S. 306 (2023).

[77] *Id.* at 310.

[78] *Id.*

15

[79] *Id.*

[80] *Id.* at 316.  The Supreme Court remanded.  *Id.* at 317.  The Court did not overturn Mr. Ciminelli's conviction.  *Id.*

[81] *United States v. Porat*, No. 22-1560, 2023 WL 5009238 (3d Cir. Aug. 7, 2023).  Other federal courts have reached a similar conclusion.  *See United States v. Pasternak*, No. 18-51, 2023 WL 4217719, at *2 (E.D.N.Y. June 27, 2023) ("The case did not involve a more abstract property interest like the bid-rigging scheme in Ciminelli; these victims lost cold hard cash. This was fraud before Ciminelli, and it is fraud today."); *United States v. Jesenik*, No. 20-228, 2023 WL 3455638, at *2 (D. Or. May 15, 2023) ("Here, all three defendants are charged with a scheme to obtain investors' money through material misrepresentations . . . The object of the alleged scheme was not 'control' or 'information,' but money itself.  And *Ciminelli* says nothing about federal criminal liability for such schemes, which are the archetypal subject of federal fraud prosecutions.").

[82] *Porat*, 2023 WL 5009238, at *1.

[83] *Id.* at *5.

[84] *Id.*

[85] *United States v. Fishbein*, No. 21-296, 2023 WL 5035179 (S.D.N.Y. Aug. 8, 2023).

[86] *Id.* at *1.

[87] *Id.*

[88] *Id.* at *9.

[89] ECF No. 1 ¶ 33.

[90] *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571–72 (1972) ("The Court has also made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money."); *Nekrilov v. City of Jersey City*, 528 F. Supp. 3d 252, 268 (D.N.J. 2021), *aff'd,* 45 F.4th 662 (3d Cir. 2022) ("[T]raditional rights associated with real estate" are federally recognized and protected property interests.).